Rockingham
No. 87-078

## Sherman v. Wheeler

### v.

## School Administrative Unit 21 & a.

July 25, 1988

*James E. Townsend*, of Londonderry, by brief and orally, for the plaintiff.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Douglas N. Steere* and *Richard E. Galway* on the brief, and *Mr. Galway* orally), for the defendants, SAU 21 and the Hartford Insurance Company.

THAYER, J. In this workers' compensation case arising out of plaintiff's inability to work and hospitalization for psychiatric treatment, the plaintiff appeals the Superior Court's (*Manias*, J.) decision approving the report of a Master (*R. Peter Shapiro*, Esq.) denying benefits pursuant to RSA chapter 281.

The plaintiff argues that the trial court erred in: (1) denying his request to depose, under subpoena, an expert with whom the defendants had originally consulted but failed to retain; (2) denying plaintiff's motion to strike the testimony of the defendants' expert because defendants failed to provide plaintiff prior to trial with all of the reports prepared by that expert; (3) applying the "substantial causation" test for legal causation; and (4) determining, against the weight of the evidence, that plaintiff's medical disorder did not arise out of and in the course of his employment. For the reasons that follow, we affirm.

Plaintiff was employed by School Administrative Unit 21 (SAU 21) as a business administrator from 1979 to 1981. SAU 21 is comprised of six different school districts and approximately 4000 students. In 1981 plaintiff became assistant SAU superintendent for finance and administration. In September 1983, plaintiff was

appointed acting superintendent after acrimonious circumstances resulting in the nonrenewal of the previous superintendent's contract. As a result of this appointment, plaintiff assumed the responsibilities of superintendent in addition to his existing full-time responsibilities as business administrator. Plaintiff began working between 60 and 70 hours per week.

According to the testimony of plaintiff's expert witness, Dr. James Farrer, who is also the plaintiff's treating physician, there were several stressful incidents which occurred during the course of the 1983–84 academic year, particularly with respect to the Hampton School Board (the board), and which aggravated this heavy work load. These included the circulation by the former superintendent of a derogatory letter to school principals within the district, criticizing plaintiff and warning them that he could not be trusted as their supervisor. Also, the board demanded that plaintiff require two principals employed within that school district, but not residing there, to move into the school district. Plaintiff felt that such action was illegal but, after protesting to the board, asked the principals to move. The board also asked plaintiff to "buyout" the contract of another district employee, a request that ran contrary to plaintiff's ethical tenets. The board exacerbated these tense relations by accusing plaintiff of receiving kickbacks on federally funded school projects. Though these allegations later proved to be groundless, they were the source of tremendous additional stress to plaintiff.

In April, plaintiff's father died and in May, plaintiff learned that another individual had been chosen as superintendent, in spite of the fact that plaintiff had also applied for that position. Also, plaintiff's daughter was planning to go away to college in the fall. According to Dr. Farrer, each of these was a factor contributing to the stress which plaintiff experienced that year.

During trial, a number of witnesses testified about the changes in plaintiff's behavior which occurred over the school year. Around Christmas, plaintiff's wife noticed that plaintiff had become overwhelmingly occupied with his work, that he was having trouble sleeping, and that he was unable to focus meaningfully on simple household tasks. Another witness testified that plaintiff was once an effective administrator, but that as the year progressed, he was having difficulty preparing even a simple agenda. Witnesses also noted changes in plaintiff's speech patterns and personal mannerisms. In the months immediately preceding plaintiff's hospitalization, his behavior became erratic and completely out of character for him.

Both plaintiff's and defendants' experts testified that plaintiff suffered from manic-depression, a serious mental illness. Both experts agreed that plaintiff possessed a preexisting biological vulnerability to the disease. However, the experts disagreed on the way in which the onset of plaintiff's manic-depression occurred.

Dr. Farrer testified that various stress-inducing circumstances precipitated the manic-depression and that the stressful nature of plaintiff's employment was a substantial factor contributing to his illness. He also testified that the majority of medical professionals today subscribe to the view that stress is a common precipitating factor in manic-depression. Defendants' expert, Dr. Robert M. Weiner, testified that stress is rarely ever a factor in the initial onset of manic-depression. He opined that plaintiff's illness was caused by a natural progression of the disease and that the pressure which plaintiff felt was unrelated to any external work-related factors.

■■ We first address the plaintiff's claims that the court wrongfully denied his request to subpoena for deposition the defendants' former expert, Dr. Drukteinis. In granting the defendants' motion to quash the subpoena, the trial court ruled that the plaintiff could subpoena Dr. Drukteinis for trial, but that the plaintiff had not carried his burden of showing that "exceptional circumstances" were present to justify a court-ordered, pretrial deposition under Superior Court Rule 35.b(3)(b). In its ruling, the court relied on *Fenlon v. Thayer*, 127 N.H. 702, 506 A.2d 319 (1986), which establishes the premise that, as a general rule, parties may "assert the right to testimonial compulsion." *Id.* at 707, 506 A.2d at 322. In *Fenlon*, we distinguished between the compulsion of trial testimony and the pretrial discovery of facts and opinions of experts, which falls within the scope of Superior Court Rule 35.b. That rule states, in pertinent part, that a party may discover the opinions or facts of an expert not expected to be called as a witness at trial "only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." In this case, the plaintiff made no showing that it was impracticable to obtain facts or opinions on the same subject. Though he argued that Dr. Drukteinis is the only expert in New Hampshire with expertise in both law and psychiatry, he did not show why it was necessary to call an expert with such dual qualifications, nor did he show that similarly qualified individuals from other States were not available to supply the opinions needed. The mere fact that no other expert with the stated qualifications is available in New Hampshire,

standing alone, is not, as a matter of law, a sufficient basis for granting the motion. Under these circumstances, where the plaintiff has failed to carry his burden of proof under Rule 35.b(3)(b), we find no abuse of discretion in the trial court's denying the motion to depose the expert witness.

Next, we consider the plaintiff's claim that the trial court wrongfully refused to strike the testimony of the defendants' expert, Dr. Weiner. The plaintiff also objected to Dr. Weiner's testimony on the underlying medical causation, on the ground that prior to trial he received only one of three reports prepared by Dr. Weiner, and because the one report which he did receive was silent on Dr. Weiner's theory of causation. In preparation for trial, Dr. Weiner examined the plaintiff. Thereafter, counsel for both parties agreed to exchange all experts' reports. A report was sent to the plaintiff after this first examination. Dr. Weiner then examined the plaintiff a second time, whereupon plaintiff's counsel sent to defendants' counsel a request for an updated report. Though defense counsel promised to send the follow-up report, he did not.

While the defendant may have had an affirmative duty to provide the plaintiff with two additional reports which Dr. Weiner had prepared, SUPER. CT. R. 35.e(1) and (2); see *Kearsarge Computer, Inc. v. Acme Staple Co.*, 116 N.H. 705, 708, 366 A.2d 467, 470 (1976) (duty to supplement responses to interrogatories), we do not find the plaintiff's argument convincing, because he failed to pursue compelled production of supplemental reports through the courts. Plaintiff's counsel was aware prior to trial that the report which he received was silent on Dr. Weiner's theory of medical causation and that there had been a second examination of plaintiff by Dr. Weiner. Yet knowing this prior to trial, he never filed any pleadings with the court nor asked for the court's assistance in any way to obtain an updated report. Upon the plaintiff's objection at trial, the court appropriately responded that if "counsel . . . feel that they have not received all the information available to them [they may] apply to the court itself for relief. . . ."

■ At the close of trial, plaintiff's counsel again moved to strike Dr. Weiner's testimony. Again, the court denied the motion. Under these circumstances, where the plaintiff did not previously seek the court's assistance to compel production of material we find no abuse of discretion.

■ We next address the plaintiff's claims that the court applied the wrong legal standard of review. After considering the evidence produced at trial, the master concluded that the plaintiff

had failed to meet his burden of proof under *New Hampshire Supply Co. v. Steinberg*, 119 N.H. 223, 400 A.2d 1163 (1979). *Steinberg* sets forth a two-part analysis as a predicate for obtaining workers' compensation benefits in heart attack cases. There the plaintiff argued that work-related conditions precipitated and thus caused, or at least contributed to, her husband's death. *Id.* at 224–25, 400 A.2d at 1164–65. Under *Steinberg*, a plaintiff must establish both legal and medical causation. With respect to legal causation, where there is a prior weakness, "the employment must contribute something substantial" to the injury. Where there is no prior weakness, "*any* exertion connected . . . as a matter of medical fact is adequate to satisfy the legal test of causation . . . ." *Steinberg, supra* at 231, 400 A.2d at 1168 (citing *Couture v. Mammoth Groceries, Inc.*, 116 N.H. 181, 183, 355 A.2d 421, 423 (1976)) (emphasis in original). To establish medical causation, plaintiff must show that the work-related "stress . . . probably caused or contributed" to plaintiff's injury. *Steinberg supra.*

With respect to legal causation, the plaintiff assigns error to the trial court's determination that a prior weakness existed. Contrary to his contention that there was no evidence of an actual manic-depressive condition prior to his hospitalization, there was testimony from Dr. Farrer, plaintiff's own treating physician, regarding plaintiff's biological and psychological vulnerability to the disease.

 The plaintiff also argues that the master erred in applying the "substantial contribution" test here. The master stated that he was "not convinced on the balance of probabilities that [plaintiff's] employment situation was a *substantial contributing factor* to his illness" (emphasis added), while, at the same time, he granted plaintiff's request for finding of fact #11, which states "[B]etween August of 1983 and September of 1984, employees, officers, and agents of SAU 21 placed [plaintiff] under stress or strain that was greater than that encountered in normal non-employment life." "Where there is a prior weakness . . . the employment must contribute something substantial to the injury[.] That is, the employment-connected stress or strain must be *greater than is encountered in normal nonemployment life*." *Steinberg supra*; *Cheshire Toyota/Volvo, Inc. v. O'Sullivan*, 129 N.H. 698, 702, 531 A.2d 714, 716 (1987); *Bartlett Tree Experts Co. v. Johnson*, 129 N.H. 703, 708–09, 532 A.2d 1373, 1376 (1987) (emphasis added). Where the master found that the stress in plaintiff's employment was greater than that in plaintiff's nonemployment life, the substantial

contribution factor required by *Steinberg* has been satisfied, and plaintiff has shown that legal causation exists.

However, we need not resolve the apparent conflict in the master's report because "[r]egardless of which test of legal causation is appropriate . . . the test of medical causation remains the same: did the work-related stress *probably cause or contribute* to the employee's [illness] as a matter of medical fact." *Cheshire Toyota/Volvo, Inc. v. O'Sullivan, supra* at 702, 531 A.2d 714, 716 (citing *Bartlett Tree Experts Co. v. Johnson, supra* at 709, 532 A.2d at 1376) (emphasis added).

The plaintiff's final argument that the master's finding of no medical causation was against the weight of the evidence fails, and we find sufficient evidence in the record to support the master's determination. The credentials of both experts were examined at trial. Even though the plaintiff challenges Dr. Weiner's testimony on medical causation on the ground that the doctor did not reference modern medical literature or recent clinical experience, the record reflects that Dr. Weiner has been a private practitioner in the field of psychiatric medicine for several years and holds a teaching position at Harvard Medical School. In the year preceding trial, Dr. Weiner had devoted approximately 60 to 70 percent of his professional time to treating patients. Thus, the master was free to give whatever weight he deemed appropriate to Dr. Weiner's testimony.

At trial, Dr. Weiner stated that plaintiff's illness was the result of a natural progression of the disease of manic-depression and that the plaintiff's illness had progressed independently from his employment. The master denied plaintiff's request for a finding that his illness was either "caused or exacerbated by the job-related stress." The weighing of testimony is within the trial court's province, *Ballou v. Ballou,* 118 N.H. 463, 465–66, 387 A.2d 1169, 1170 (1978).

We cannot say on these facts that the master's determination regarding the lack of medical causation was, as a matter of law, against the weight of the evidence. We accordingly affirm.

*Affirmed.*

All concurred.