NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Compensation Appeals Board
No. 2019-0115

APPEAL OF ELIZABETH DOODY
(New Hampshire Compensation Appeals Board)

Argued: November 19, 2019
Opinion Issued: January 31, 2020

Rice Law Office PLLC, of Laconia (Anne M. Rice on the brief and orally), for the petitioner.

Devine, Millimet & Branch, Professional Association, of Manchester (Eric G. Falkenham on the brief and orally), for the respondent.

HICKS, J. The petitioner, Elizabeth Doody (claimant), appeals a decision of the New Hampshire Compensation Appeals Board (CAB) denying her claim for indemnity benefits and payment of medical bills. The parties dispute whether the claimant's injury arose out of her employment by the respondent, the Laconia School District (District), as required by RSA 281-A:2, XI (Supp. 2019). We vacate and remand.

I. Facts

The CAB found, or the record establishes, the following facts. The claimant has been employed by the District since 1991. She has been an elementary school speech assistant for more than a decade. In that position, she works with approximately 20 students daily. Her job requires her to

accompany students from their location to a special services room as well as to supervise a locked side entrance door at the beginning of the school day when students arrive and at the end of the school day when they depart.  Of the school's 300 students, approximately 125 students typically use the side entrance, which consists of an outside concrete area, an exterior door that accesses a small atrium with a floor mat, and an interior door that accesses the corridor.  In winter weather, the outside concrete area is treated with sand and ice melt product.

On April 18, 2017, the claimant fell twice while walking down the corridor toward the side entrance, once at approximately 8:30 a.m. and again at approximately 3:00 p.m.  Both falls occurred in the same location.  The morning fall did not injure the claimant, but the afternoon fall fractured her right arm, which had to be repaired surgically.  The claimant was taken out of work by one of her doctors the day after the injury and was released to part-time work with modifications effective June 5, 2017.  Because the District was unable to accommodate the restrictions, the claimant remained out of work until school resumed in the fall.  Despite the surgery and a subsequent course of physical therapy, the claimant remains unable to lift her right hand over her head and continues to experience pain.

The claimant subsequently sought indemnity benefits and payment of medical bills.  The District's insurance carrier denied her claim because it determined that her injury was not causally related to her employment.  A department of labor hearings officer upheld the denial of benefits, and the claimant appealed that decision to the CAB.  The CAB upheld the hearings officer's decision, finding that the claimant failed to prove, more probably than not, either "that a defect in the floor surface or door mat posed an actual risk that caused [her] fall," or that her "unexplained fall was a neutral risk that met the increased risk test under Appeal of Margeson."  See Appeal of Margeson, 162 N.H. 273, 283 (2011).  The claimant unsuccessfully moved for reconsideration, and this appeal followed.

II. Discussion

A. Standard of Review

We will not disturb the CAB's decision absent an error of law, or unless, by a clear preponderance of the evidence, we find it to be unjust or unreasonable.  Id. at 276; see RSA 541:13 (2007).  The CAB's factual findings are prima facie lawful and reasonable.  RSA 541:13; see RSA 281-A:43, I(c) (2010) (stating that appeals from the CAB are subject to RSA chapter 541).  We review the CAB's factual findings deferentially and will uphold them unless the evidence does not support them.  See Appeal of Kelly, 167 N.H. 489, 491 (2015); Appeal of Kehoe, 141 N.H. 412, 415 (1996).  We review the CAB's legal rulings de novo.  See Appeal of Kelly, 167 N.H. at 491.  We construe the

2

Workers' Compensation Law liberally to give the broadest reasonable effect to its remedial purpose.  Id.  Thus, we resolve all doubts in statutory interpretation in favor of the injured worker.  Appeal of Lalime, 141 N.H. 534, 537-38 (1996).  As the appealing party, the claimant has the burden of demonstrating that the CAB's decision was erroneous.  Appeal of Margeson, 162 N.H. at 276.

B.  Workers' Compensation Law In General

To obtain workers' compensation benefits, a claimant must show that her injuries arose "out of and in the course of employment."  RSA 281-A:2, XI. The phrase "in the course of" employment, id., refers to whether the injury "occurred within the boundaries of time and space created by the terms of employment" and "occurred in the performance of an activity related to employment."  Murphy v. Town of Atkinson, 128 N.H. 641, 645 (1986).  The phrase "arising out of" employment, RSA 281-A:2, XI, refers to the causal connection between a claimant's injury and the risks of employment and requires proof that the injury "resulted from a risk created by the employment." Id.  In the instant case, there is no dispute that the claimant's injury occurred "in the course of" her employment.  Thus, this opinion focuses upon whether it also "arose out of" her employment.

To determine whether an injury arises out of employment, we have recognized four types of injury-causing risks commonly faced by employees at work: "(1) risks directly associated with employment; (2) risks personal to the claimant; (3) mixed risks; and (4) neutral risks."  Appeal of Margeson, 162 N.H. at 277.  The first category of risks includes "all the obvious kinds of injuries that one thinks of at once as industrial injuries," such as falling objects, explosives, and fingers caught in gears.  Id. (quotation and brackets omitted). This category of risks always "arises out of employment" for the purposes of workers' compensation benefits.  Id.

The second category of risks, personal risks, includes risks that are so clearly personal that they could not possibly be attributed to employment.  Id. Injuries caused solely by an employee's "bad" knee or epilepsy fall into this category.  Id. at 277-78.  Injuries falling into this category are never compensable.  Id. at 278.

The third category of risks, mixed risks, involves a personal risk and an employment-related risk combining to produce an injury.  Id.  A common example is when a person with heart disease dies because of employment-related strain to her heart.  Id.  While not all injuries resulting from mixed risks are compensable, the concurrence of a personal risk does not necessarily defeat compensability if the claimant's employment was also a substantial contributing factor to the injury.  Id.

The fourth category of risks, neutral risks, are risks that are neither distinctly employment-related nor distinctly personal in character. Id. Neutral risks include being hit by a stray bullet, struck by lightning, or bitten by a poisonous insect. Id. They also include cases in which "the cause itself, or the character of the cause, is simply unknown," such as in the case of an unexplained fall. Id. (quotation omitted). Neutral risks are compensable only if they meet the "increased-risk test." Id. at 285.

Under the increased-risk test, an employee may recover for an injury caused by a neutral risk if she demonstrates that her injury resulted from "a risk greater than that to which the general public is exposed." Id. at 283 (quotation omitted). A claimant's employment may increase a neutral risk either qualitatively or quantitatively. See id.; see also Village of Villa Park v. Compensation Com'n, 3 N.E.3d 885, 890 (Ill. App. Ct. 2013). Employment qualitatively increases a neutral risk when "some aspect of the employment contributes to the risk." Hagan v. Illinois Workers' Compensation Com'n, No. 1-14-3745WC, 2016 WL 2962932, at *4 (Ill. App. Ct. May 20, 2016). Employment quantitatively increases a neutral risk when it exposes the claimant "to a common risk more frequently than the general public." Rio All Suite Hotel and Casino v. Phillips, 240 P.3d 2, 7 (Nev. 2010) (quotation omitted).

For example, in Appeal of Margeson, the neutral risk was the risk of being injured while descending a non-defective staircase. Appeal of Margeson, 162 N.H. at 276, 278. We explained that the act of descending a staircase at work did not, in and of itself, meet the increased-risk test because it "is an everyday, commonplace activity, which most people undertake on a daily basis." Id. at 283-84. However, we concluded that an employee could meet the increased-risk test if he could show that he had to "use stairs more frequently than a member of the general public as part of his job" or that the stairs were "of an unusual height" or that the manner in which he was required to perform his job somehow increased the risk of injury. Id. at 284. The increased-risk test applies only to neutral risks. Id. at 284-85.

C. Appellate Arguments

On appeal, the claimant first argues that the CAB erred by rejecting her assertion that she was injured as a result of a risk directly associated with her employment — the first category of risks we discussed in Margeson, which we held always "arises out of employment" for the purposes of workers' compensation. Id. at 277. Before the CAB, the claimant asserted that her injury was attributable to an employment-created risk because the floor on which she fell, more probably than not, was uneven, defective, and/or slippery. See id. ("Typically, a slip and fall is only attributable to an employment-related risk if it results from tripping on a defect or falling on an uneven or slippery surface on an employer's premises."). The claimant argued that the floor where

4

she fell was pitted because the floor tile was exposed to water, sand, and ice melt product. Although she denied that the floor was wet when she fell, she contended that the floor must have had a substance on it because she had grit on her hands after falling. She also pointed out that the tile lacked grout, that the floor was regularly burnished, that the mats were raised, and that she fell twice in the same spot having never fallen before at work.

The CAB found that there was no evidence that the floor was wet or that it had been made more slippery by sand or ice melt at the time of her fall. The CAB observed that the claimant did not testify that she slipped on a wet or slippery floor. The CAB further observed that, although a photograph of the floor taken about a month after the claimant's falls shows that the floor tile was blemished, and although the claimant testified that the blemishes are the result of the tile's exposure to water, sand, and ice melt product, another witness testified that there were no defects in the floor when the claimant fell. Based upon the evidence before it, the CAB found that the claimant had failed to prove, by a preponderance of the evidence, that she was injured as a result of a risk directly associated with her employment.

Because there is evidence in the record to support the CAB's finding, we uphold it. See Appeal of Kehoe, 141 N.H. at 415. Although the evidence before the CAB was conflicting, it was for the CAB to resolve those conflicts in evidence in the first instance. See Appeal of Lalime, 141 N.H. at 540. Our task on appeal is not to decide whether we would have made the same factual findings as the CAB or to reweigh the evidence. Id. at 539.

To the extent the claimant argues that the CAB applied an incorrect test to determine whether she was injured as the result of a risk directly associated with her employment, we disagree. The CAB analyzed the claimant's assertion "that the condition of the school's flooring created an actual risk of employment," and, based upon the evidence before it, determined that the claimant had "failed to prove, more probably than not, that a defect in the floor surface or door mat posed an actual risk that caused [her] fall." The claimant argues that by using the word "fall," instead of the word "injury," the CAB "overlooked the hazard of employment that produced the ultimate injury" and required her to prove the exact mechanism of her fall. We do not share the claimant's interpretation of the CAB's decision. Guy v. Town of Temple, 157 N.H. 642, 649 (2008) ("[T]he interpretation of a tribunal's order presents a question of law, which we review de novo."). Accordingly, for all of the above reasons, we find no error in the CAB's finding that the claimant's injury was not the result of a risk directly related to her employment.

Alternatively, the claimant argues that even if her injury resulted from a neutral risk, the CAB erred when it determined that she failed to meet the increased-risk test. See Margeson, 162 N.H. at 278, 283 (describing neutral risks and the increased-risk test). Before the CAB, the claimant argued that

she was entitled to compensation, in part, because her employment required her to traverse the hallway flooring as often as 20 times per day. See Rio All Suite Hotel and Casino, 240 P.3d at 7 (determining that the claimant's injury arose out of her employment under the increased-risk test because her frequent use of the stairs subjected her to a significantly greater risk than the general public). She asserted that her job required her to walk back-and-forth in the school hallways so frequently because she does not have her own classroom, but, instead, must accompany students from their classrooms to a different space.

The CAB rejected this argument, finding persuasive the District's assertions that, to meet her burden under the increased-risk test, the claimant had to demonstrate that she "walked more at work than in her personal life" or that "the commercial flooring the claimant walked on at her workplace is more slippery than other types of flooring that she or the general public routinely encounter." (Emphasis added.)

The claimant contends that by adopting the District's assertions, the CAB misapplied the increased-risk test. We agree. To prevail under the increased-risk test, the claimant had to establish that her employment either quantitatively or qualitatively increased the risk of injury. See Appeal of Margeson, 162 N.H. at 283. Here, the CAB did not make express factual findings regarding whether, because the claimant had to walk the hallways more than 20 times per day, she walked more frequently than a member of the general public. Nor did the CAB make express factual findings about whether the claimant was subject to an increased risk of injury because her job requires that she accompany students from their location to a special room and that she supervise the side entrance door at the beginning and end of the school day. Cf. Marion Correctional Center v. Henderson, 458 S.E.2d 301, 303 (Va. Ct. App. 1995) (determining that employee's manner of performing his job increased his risk of falling where employee testified that he always checked the guard towers when he walked through the correctional unit and that he slipped while descending stairs and checking one of the towers). Accordingly, because the CAB misapplied the increased-risk test, and because applying that test requires further fact-finding, we vacate the CAB's decision and remand for it to make further factual findings and correctly apply the increased-risk test to those facts.

Vacated and remanded.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.