NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Compensation Appeals Board
No. 2021-0187


APPEAL OF ELBA HAWES
(New Hampshire Compensation Appeals Board)

Argued: February 10, 2022
Opinion Issued: June 3, 2022


Douglas, Leonard & Garvey, P.C., of Concord (Benjamin T. King on the brief and orally), for the claimant.


Mullen & McGourty, P.C., of Salem (Craig A. Russo and Matthew Solomon on the brief, and Craig A. Russo orally), for the employer.


HICKS, J.  The claimant, Elba Hawes, appeals a decision of the New Hampshire Compensation Appeals Board (CAB) determining that he is not entitled to workers' compensation benefits.  We reverse and remand.

The following facts are undisputed for the purposes of this appeal.  The claimant was employed as a "ground man" for the employer, Asplundh Tree Expert, LLC.  In November 2019, the claimant and his fellow workers were working at a job site that was approximately 10-15 minutes away from a sandpit in Conway, where they punched in and punched out.

On the morning of November 1, 2019, the claimant reported to work for his regular 7:00 a.m. to 4:00 p.m. shift, punched in, left his personal vehicle at the sandpit, and traveled with his coworkers to the job site in company trucks. Because of an impending storm, the employer told its workers to stop work at noon, punch out, and go home and rest for the afternoon so they could return to the sandpit at 8:00 p.m. for storm cleanup activities through the night. It was not uncommon for the work schedule to change because of weather. As instructed, the claimant left the job site with his coworkers, returned to the sandpit, and punched out at noon. Soon after driving away from the sandpit in his personal vehicle, the claimant was severely injured in a vehicular accident that was not his fault. Because of his accident-related injuries, the claimant was disabled from work from November 1, 2019, through February 9, 2020.

The employer's insurance carrier denied benefits on the ground that the claimant's injuries were not causally related to his employment. At the claimant's request, the matter was heard by a New Hampshire Department of Labor hearing officer, who ruled in the carrier's favor. The claimant appealed the hearing officer's decision to the CAB, which reviewed the matter de novo. The CAB ruled that the claimant's workers' compensation claim was barred by the "coming and going rule." The claimant unsuccessfully moved for rehearing, and this appeal followed.

We will not disturb the CAB's decision absent an error of law, or unless, by a clear preponderance of the evidence, we find it to be unjust or unreasonable. Appeal of Doody, 172 N.H. 802, 805 (2020); see RSA 541:13 (2021). When, as in this case, the CAB has decided the matter based upon undisputed facts, we review its application of law to the undisputed facts de novo. Cf. N.H. Right to Life v. Dir., N.H. Charitable Trusts Unit, 169 N.H. 95, 103 (2016) (referring to our review of a trial court's application of law to undisputed facts). As the appealing party, the claimant has the burden of demonstrating that the CAB's decision is reversible. See Appeal of Doody, 172 N.H. at 806.

To obtain workers' compensation benefits, a claimant must show that his or her injuries arose "out of and in the course of employment." RSA 281-A:2, XI (Supp. 2021). The phrase "arising out of" employment, id., refers to the causal connection between a claimant's injury and the risks of employment and requires proof that the injury "resulted from a risk created by the employment." Murphy v. Town of Atkinson, 128 N.H. at 641, 645 (1986). The phrase "in the course of" employment, RSA 281-A:2, XI, refers to whether the injury "occurred within the boundaries of time and space created by the terms of employment" and "in the performance of an activity related to employment." Murphy, 128 N.H. at 645 (explaining that, to be compensable, an injury must be "related to employment in terms of time, space and subject matter"). The

2

test, thus, contains three elements, and the failure to prove any one of them is fatal to a claimant's workers' compensation claim. Harrington v. Brooks Drugs, 148 N.H. 101, 105 (2002).

We first consider the second and third elements, which are whether the claimant's injury "occurred within the boundaries of time and space created by the terms of employment" and "in the performance of an activity related to employment." Murphy, 128 N.H. at 645. "We have repeatedly recognized that the ordinary perils of travel between home and work are not considered hazards of employment and, therefore, that injuries arising from such travel are noncompensable under our Workers' Compensation Law." Harrington, 148 N.H. at 106. Thus, the general rule, sometimes referred to as the "coming and going" or "going and coming" rule, is that injuries sustained while traveling to and from work are not compensable for employees with fixed hours and a fixed place of employment. See Cook v. Wickson Trucking Co., 135 N.H. 150, 154 (1991); Heinz v. Concord Union School Dist., 117 N.H. 214, 218 (1977); Donnelly v. Kearsarge Tel. Co., 121 N.H. 237, 240-42 (1981).

We have noted that the going and coming rule is of "doubtful utility" because it "is riddled with various exceptions." Brousseau v. Blackstone Mills, 100 N.H. 493, 494 (1957). Nonetheless, we have declined to overrule it because of our concern that doing so would lead to portal-to-portal compensation, which is "a journey upon which we [have not been] prepared to embark." Harrington, 148 N.H. at 106 (quotation omitted).

The claimant argues that his injuries are compensable under the "special errand" exception to the coming and going rule. Under the "special errand" exception, "[w]hen an employee makes an off-premises journey which would normally not be covered under the usual coming and going rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is sufficiently substantial to be viewed as an integral part of the service itself." Heinz, 117 N.H. at 218-19 (quotation and ellipsis omitted); see Henderson v. Sherwood Motor Hotel, 105 N.H. 443, 445 (1964) ("Although the Workmen's Compensation Law is not intended to protect the employee from all of the perils of travel between home and place of employment[,] it may properly be held to provide protection when a peril which arises out of employment overtakes the employee when he is returning home after employment beyond the usual working hours, as the result of special duties which thus subject him to special travel risks." (citation omitted)).

We applied this exception in Donovan v. Mills, 90 N.H. 450, 452-53 (1940), Henderson, 105 N.H. at 445-46, Heinz, 117 N.H. at 218-21, and Donnelly, 121 N.H. at 240-42. These cases remain good law despite decisional

3

law and legislative developments. See, e.g., Appeal of Margeson, 162 N.H. 273, 279, 283 (2011) (setting forth different tests for causation depending upon nature of the risk); RSA 281-A:14 (2010) (concerning workers' compensation liability when employee is intoxicated). We now discuss Donovan, Henderson, Heinz, and Donnelly in turn.

The plaintiff in Donovan was an overseer in the defendant's mill. Donovan, 90 N.H. at 451. Part of his job was to ensure that the supplies and parts needed to keep the looms in good working order were on hand and to repair or supervise repairs to the looms. Id. He was hurt while driving his son's automobile en route to buy material needed to correct a defective process in the manufacture of cloth at the mill. Id. We held that "[i]t was an act of employment for the plaintiff to take the trip, and he was hurt in consequence of the act" because he was "perform[ing] an errand for his employer." Id. at 452-53.

In Heinz, the decedent, a high school teacher, had volunteered to chaperone a school dance on the night in question and was killed while driving home from a private party to change his clothes and pick up his wife before chaperoning. Heinz, 117 N.H. at 216-17. We held that the decedent's "chaperoning duties" were "properly . . . characterized as a special duty or errand, and subjected the decedent to special travel risks." Id. at 219. We considered "the undisputed evidence that chaperoning was an irregular event, that duties occupying evening weekend hours were not routine, and that evening travel often presents special hazards." Id. We concluded that "from the moment he left the party the decedent was principally occupied with the business of getting to the school dance," noting that the party "was within reasonable physical proximity of the school," and that "objective temporal circumstances imposed a principally work-connected character on the journey from the party." Id. at 220, 221. Therefore, we concluded, the decedent's journey from the party to his home was "sufficiently related to the special duties imposed to be considered a hazard of the employment." Id. at 220 (quotation omitted).

In Henderson, we were asked to decide whether the facts as stated in the opening statement by plaintiff's counsel, if supported by evidence, entitled the plaintiff to compensation. Henderson, 105 N.H. at 444. According to the opening statement, the plaintiff's intestate, the decedent, was employed as a cocktail waitress by the defendant hotel and had been called to the hotel for special duty to work until 9:00 p.m. on the night in question. Id. The decedent was asked to serve liquor to guests at a party that was being held at the hotel. Id. In the course of waiting upon the guests at the party, the decedent became intoxicated. Id. Although the employer was aware that she was intoxicated, she was allowed to leave the hotel alone at about 3:30 a.m. Id. She died in an

4

accident on her way home.  Id.  We held that the facts set forth in the opening statement, if proved, entitled the plaintiff to compensation in part because "the decedent's employment may reasonably be said to have put [her] at the place where she was and in the condition she was in at the time of the accident."  Id. at 446 (quotation and brackets omitted).

The employee in Donnelly argued that being required to take a company vehicle home during his on-call week constituted a "special errand" under Heinz.  Donnelly, 121 N.H. at 242.  We assumed without deciding that the employer imposed such a duty, but concluded that the employee's morning journey to his employer's place of business, before he was required to take home the company vehicle, "was merely a normal trip by the employee to his employer's place of business to begin a usual day of work."  Id. at 242-43.  We reasoned that "[b]ecause a usual day of work would intervene between the morning journey and the trip home with the truck that evening," and given that he was not responding to a call related to his on-call status, the employee's injury did not fall within the "special errand" exception to the going and coming rule.  Id. at 243.

Here, we conclude that the claimant's injuries are compensable under the special errand exception.  The claimant's journey home that day occurred at noon, instead of at the end of his regular shift.  Although it was not uncommon for the work schedule to change because of weather, the claimant's trip home at noon was not part of his regular schedule.  The claimant would not have left work at noon but for the employer's direction to do so. Significantly, when the claimant left work at noon, his day's work was not finished.  The employer directed him to go home and advised that he rest so that he could return to work at 8:00 that evening.  See Bisdom v. Kerbrat, 232 N.W. 408, 409 (Mich. 1930) (en banc).  The claimant's journey "was special, not because it differed in nature" from his normal commute, "but because it had to be done at a time different from [his] usual hours" at the employer's special request.  Lucas v. Triad Drilling Co., 969 P.2d 363, 367 (Okla. 1998); see Gray v. Lyons Transp., 579 N.Y.S.2d 213, 214 (App. Div. 1992) (upholding the New York Workers' Compensation Board's determination that reporting to work early "constituted a special service involving the undertaking of travel not associated with claimant's normal work hours").  As the claimant testified:

> Q Did you receive any news during the morning of November 1, 2019, about a change in your plans [to be on the job site the entire day]?
>
> A Yes, we got a call from our boss saying that we were to leave at 12:00 o'clock and come back at 8:00 o'clock p.m.
>
>     . . . .

Q All right. . . . [Y]ou stopped working at noon, right?
A Yes.

Q And you stopped working at noon because your employer directed you to stop working at noon, right?

A Yes.

Q You didn't normally stop working at noon, right?

A No.

. . . .

Q If your employer had not directed you to go home in the middle of the day . . . , would there have been any circumstances when you . . . would have left work in the middle of the day to go home?

A. No.

. . . .

Q Did your employer tell you what to do when you went home on November 1, 2019 at noon?

A Yeah, they had told us to go home and rest.

Although the CAB characterized the employer's instruction "to go home and rest" as an "unenforceable suggestion," this characterization is not relevant to our analysis. See Heinz, 117 N.H. at 216, 219 (deciding that, although the decedent "was not obligated to chaperone school dances" as part of his employment, his chaperoning duties constituted "a special duty or errand" and "subjected [him] to special travel risks").

This case is, therefore, similar to Heinz and dissimilar to Donnelly. Like the employee in Heinz, the claimant here was traveling home in preparation for returning to work for a special duty. Heinz, 117 N.H. at 216-17, 220-21. In Heinz, the special duty was chaperoning, id. at 219; here, the special duty was overnight storm clean-up work. Unlike the employee in Donnelly, who was injured during his normal morning commute, before the "special duty" to take a company vehicle home had been imposed, Donnelly, 121 N.H. at 242-43, the claimant in this case was injured on his way home, after he was specifically directed to interrupt his workday.

6

We find Bisdom instructive.  In Bisdom, the decedent was directed by his employer to leave work early so that he could go home, eat dinner, change clothes, and then return to his employer's home so that the two could travel to meet with a prospective client.  Bisdom, 232 N.W. at 409.  The decedent left work, as instructed, but was killed in an automobile accident on his way home.  Id.  The Michigan Supreme Court ruled that the decedent's death was compensable as he was "acting within the course of his employment and in accordance with the directions of his employer at the time he suddenly met with his death through the hazards incurred on the public highway."  Id.  Similarly, in this case, the claimant was directed by his employer to suspend his workday so that he could go home before reporting back to work later that evening and was injured on his way home.

Having concluded that the second and third elements of the Murphy test are met, we turn next to the first element, whether the claimant's injury "resulted from a risk created by the employment."  Murphy, 128 N.H. at 645.  In Appeal of Margeson, we identified four types of injury-causing risks commonly faced by an employee at work: "(1) risks directly associated with employment; (2) risks personal to the claimant; (3) mixed risks; and (4) neutral risks."  Appeal of Margeson, 162 N.H. at 277.  Mixed risks "involve a personal risk and an employment risk combining to produce injury."  Id. at 278.  Neutral risks "are of neither distinctly employment nor distinctly personal character," such as "being hit by a stray bullet [or] being struck by lightning."  Id. (quotation omitted).  "They also include cases in which the cause itself, or the character of the cause, is simply unknown."  Id. (quotation omitted).  Employment-related risks are nearly always compensable; personal risks are never compensable.  Id. at 277-78.

The CAB did not reach the first element of the Murphy test.  Ordinarily, we would remand this unresolved issue because applying the first element of the Murphy test "requires further fact-finding," Appeal of Doody, 172 N.H. at 809-10; however, when "the record reveals that a reasonable fact finder necessarily would reach a certain conclusion, we may decide that issue as a matter of law," Appeal of Cote, 139 N.H. 575, 580 (1995).

The only evidence before the CAB was that the claimant was injured while traveling home in the middle of his workday when a vehicle crossed the center lane and hit his vehicle "head on," sending his vehicle "across the oncoming lane," where it was "hit by a tractor trailer."  There was no evidence that a risk personal to the claimant contributed to the accident.  Accordingly, the risk faced by the claimant was neither personal nor mixed.  See Appeal of Margeson, 162 N.H. at 277-78.

The risk of a vehicular accident in this case is of a "distinctly employment . . . character," and is not a neutral risk.  Id. at 278 (quotation

7

omitted).  Here, the risk of a vehicular accident occurring during the claimant's travel was a hazard commonly associated with highway travel and was not akin to the risk of "being hit by a stray bullet [or] being struck by lightning."  Appeal of Margeson, 162 N.H. at 278.  Because the claimant's travel home in the middle of the workday was occasioned by his employment, the risk that he would be injured by a hazard commonly associated with such travel was an employment-created risk.  Accordingly, we conclude that the first element of the Murphy test is met as a matter of law.  For all of the above reasons, therefore, we reverse the CAB's decision that the claimant's injuries are not compensable, and hold that they are.

Reversed and remanded.

MACDONALD, C.J., and BASSETT and DONOVAN, JJ., concurred; HANTZ MARCONI, J., concurred specially.


HANTZ MARCONI, J., concurring specially.  Although I join the court's opinion in full, I write separately to highlight one point: not all injuries incurred while traveling "in the course of" employment will be directly associated with employment, and thereby "ar[i]se out of employment."  Appeal of Margeson, 162 N.H. 273, 277 (2011); see RSA 281-A:2, XI (Supp. 2021).  In other words, not all injuries incurred during travel related to employment will be compensable.