Compensation Appeals Board
No. 96-722

## APPEAL OF JAMES BELLISLE

### (New Hampshire Compensation Appeals Board)

October 15, 1999

*Nixon, Raiche & Manning, P.A.*, of Manchester (*Maureen Raiche Manning* on the brief and orally), for the petitioner.

*Wiggin & Nourie, P.A.*, of Manchester (*Andrew A. Merrill* and *Thomas W. Aylesworth* on the brief, and *Mr. Merrill* orally), for respondent Atlantic Mutual Insurance Company.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Nelson A. Raust* on the brief), for respondent Hannaford Brothers.

HORTON, J. The petitioner, James Bellisle, appeals from a decision of the New Hampshire Compensation Appeals Board (board) denying him workers' compensation benefits. We vacate and remand.

The petitioner has been employed by Alexander's Markets of NH, Inc., and its successor, Hannaford Brothers, since December 1979. In December 1980, he became a full-time employee. In April 1984, he was promoted to the position of head receiver. Approximately seventy-five percent of his job responsibilities at that time entailed lifting parcels.

In July 1987, the petitioner suffered back pain when he jumped from a height of approximately eighteen inches while working. He sought medical treatment at St. Joseph's Hospital in Nashua, was prescribed medication, and instructed to rest. Roughly three weeks later, the petitioner suffered similar back pain while opening receiving doors at work. He sought further treatment at St. Joseph's Hospital and received the same therapy. He missed a few days of work after each of these episodes.

In June 1988, the petitioner began working at the Hooksett store. His duties included moving approximately 1,000 boxes daily, ranging in weight from three to seventy pounds. During this time, he began regularly working overtime hours. In the spring of 1989, the petitioner's back pain gradually increased until April 26, when he could not finish the workday due to back pain. His pain in 1989 differed from his earlier pain in location and quality. The pain was located on the left side and at the top of the hip, and felt like "bone grinding bone," leaving "numbness in [his] left leg." The petitioner returned to St. Joseph's Hospital, where he was diagnosed with "spondylolisthesis of L5-S1," and surgery was recommended. Rather than undergo surgery, the petitioner sought treatment with an osteopath who prescribed physical therapy and periodic adjustments.

The petitioner returned to work on June 1, 1989, and performed modified duties. He testified that his modified position reduced

lifting activities from "approximately seventy-five percent" to "approximately forty percent" of his responsibilities. At some point in 1990 or early 1991, Hannaford Brothers became the owner of the store. The petitioner continued to work without incident until 1992, when he slipped and fell down fifteen steps. He subsequently sought treatment and missed over a week of work. Upon returning, he was transferred to the Goffstown store. The petitioner suffered there from lower back pain that gradually escalated and eventually prevented him from completing the workday on June 28, 1993. He sought treatment from Drs. White and Kleeman, who reiterated the previous diagnosis of spondylolisthesis. The petitioner continued to work until October 15, 1993, by which time the pain had become severe and disabling. Although the petitioner attempted to avoid surgery through a physical therapy regimen, he ultimately underwent a spinal fusion on February 15, 1994. He returned to work part-time on August 1, 1994.

After a hearing, the board found that "the [petitioner's] condition was unfortunately congenital in nature and that it came about irrespective of his employment activities," and denied the petitioner's petition for workers' compensation benefits. On appeal, we need only address the petitioner's first argument — that the board erred in denying benefits on the basis that his condition was congenital in nature and came about irrespective of his employment activities. "We will not overturn the board's decision, except for errors of law, unless the petitioner has shown it to be clearly unreasonable or unjust." *Appeal of Lalime*, 141 N.H. 534, 537, 687 A.2d 994, 997 (1996); *see* RSA 541:13 (1997).

"Regardless of the presence of a pre-existing degenerative condition, an accidental injury within the meaning of the workers' compensation law need not be traumatic or dramatic, but rather may arise from routine activities that result in an unexpected effect." *Appeal of Briggs*, 138 N.H. 623, 627, 645 A.2d 655, 658 (1994). Cumulative trauma results in injury only when the employee is unable to continue working. *Id.* at 631, 645 A.2d at 661. "The same rule applies where the petitioner has a preexisting condition not caused, but rather aggravated or exacerbated, by cumulative work-related activities." *Id.* (citations omitted). An employee who recovers from previous injuries resulting in workers' compensation benefits can recover for a new disability arising from a new acute injury or cumulative trauma. *See Appeal of Gelinas*, 142 N.H. 295, 297-98, 700 A.2d 870, 871 (1997); *Appeal of Briggs*, 138 N.H. at 627-28, 645 A.2d at 659.

■ An employee with a congenital or degenerative disease need not prove that his disability would not have arisen but for his employment. If work activities *contribute* to the employee's disability, even if disability without such contribution would result from his condition at some future date, the employee may recover. *See Appeal of Briggs*, 138 N.H. at 628-29, 645 A.2d at 659. An employee need prove only that either a specific incident, *see Petition of Croteau*, 139 N.H. 534, 538, 658 A.2d 1199, 1203 (1995) (aggravation of pre-existing condition by discrete work-related injury may be compensable), or cumulative work-related stress contributed to, aggravated, exacerbated, or accelerated the employee's congenital or otherwise preexisting condition to disability. *See* RSA 281-A:2, XI (Supp. 1997); *Appeal of Gelinas*, 142 N.H. at 298, 700 A.2d at 872; *Appeal of Cote*, 139 N.H. 575, 579, 660 A.2d 1090, 1094 (1995); *Appeal of Briggs*, 138 N.H. at 627, 645 A.2d at 659.

In this regard, the petitioner bears the burden of proving legal and medical causation. *See, e.g., Appeal of Kehoe*, 141 N.H. 412, 416, 686 A.2d 749, 752 (1996). "Legal causation entails a showing that the [petitioner's] injury is in some way work-related, while medical causation requires a showing that the injury was actually caused by the work-related event or condition." *Id.*

■ The legal causation test establishes the degree of exertion necessary to make an injury work-connected. *Id.* If an employee has a preexisting disease or condition prior to employment, the employee must show by a preponderance of the evidence that the employment contributed something substantial to the employee's medical condition by showing that work conditions presented greater risks than those encountered in non-employment activities. *Id.* "Where there is no preexisting condition, *any* work-related activity connected with the injury as a matter of medical fact would be sufficient to show legal causation." *Id.*

■ Under the medical causation test, an employee must show, by a preponderance of the evidence, that the work-related activities probably caused or contributed to the employee's disabling injury as a matter of medical fact. *Id.* at 417, 686 A.2d at 752-53. An employee need not prove direct causation but must establish that the activities caused the activation of disabling symptoms. *Id.* at 417, 686 A.2d at 753.

Here, the parties do not dispute that the petitioner suffers from spondylolisthesis, an affliction of the spinal cord. The board's finding that the petitioner's condition was "congenital in nature" is not dispositive. The finding does not "address[] the question whether

the [petitioner's] employment activities — whether cumulatively or as a result of a discrete injury — contributed to or aggravated his [spondylolisthesis] to the point of disability." *Appeal of Gelinas*, 142 N.H. at 298, 700 A.2d at 872.

We note that Drs. DeBonis and Polivy stated in their medical reports that the petitioner did not perform work-related lifting activities after his 1989 injury. The board apparently based its decision to deny benefits on these reports. The petitioner testified, however, that his modified position reduced lifting activities from "approximately seventy-five percent" to "approximately forty percent" of his responsibilities. The record reveals no evidence controverting this testimony. In addition, the board found the petitioner to be a credible witness. The board found that the petitioner "still lifted but not to the same extent as before" in his modified job responsibilities, yet relied on the medical conclusions of Drs. DeBonis and Polivy to deny benefits.

We vacate and remand for proceedings consistent with this opinion. On remand, the board shall determine whether the petitioner's work-related activities aggravated or accelerated his pre-existing condition to the point of disability. Further, the board shall clarify the apparent inconsistency in its decision regarding the petitioner's work-related lifting activities.

*Vacated and remanded.*

THAYER, J., sat but did not participate in the decision; the others concurred.