Compensation Appeals Board
No. 2013-867

APPEAL OF BRANDON KELLY
(New Hampshire Compensation Appeals Board)

Argued: September 18, 2014
Opinion Issued: March 20, 2015

*Nixon, Vogelman, Barry, Slawsky & Simoneau, P.A.*, of Manchester (*Leslie C. Nixon* and *David L. Nixon* on the brief, and *Ms. Nixon* orally), for the petitioner.

*Mullen & McGourty*, of Salem (*Craig A. Russo* on the brief and orally), for the respondent.

*Douglas, Leonard & Garvey, P.C.*, of Concord (*Benjamin T. King* on the brief), for New Hampshire Association for Justice, as *amicus curiae*.

BASSETT, J. The petitioner, Brandon Kelly, appeals a decision of the New Hampshire Compensation Appeals Board (CAB) denying his claim for workers' compensation benefits for severe injuries he sustained while driving between a job site and his place of employment. The CAB ruled that the injuries did not arise out of his employment as required by RSA 281-A:2, XI (2010). We reverse and remand.

The CAB found, or the record supports, the following facts. The petitioner was an employee of Advanced Sheet Metal in Hudson. His job involved traveling to job sites in a company truck. On March 16, 2012, after working at a job site in Massachusetts, the petitioner departed for the company shop in Hudson where he intended to unload the truck. While driving, he fell asleep and hit a utility pole. As a result of the accident, his lower leg was amputated.

The petitioner sought workers' compensation benefits. After the respondent, Arbella Insurance Company, denied his claim, a hearing was held before the New Hampshire Department of Labor, which awarded benefits. The respondent appealed to the CAB, which, in a 2-1 decision, denied the petitioner's claim. The CAB found that it was undisputed that the petitioner was acting in the course of his employment at the time of the accident, and that the accident occurred because he fell asleep while driving. However, the CAB ruled that the injuries did not arise out of his employment. The CAB found that the injury was caused by a "mixed risk," *see Appeal of Margeson*, 162 N.H. 273, 278 (2011), but that the petitioner failed to prove that "whatever abnormal weariness, if any, [he] might have been suffering that day was caused by his employment." The petitioner's motion for reconsideration was denied, and this appeal followed.

"We will not disturb the CAB's decision absent an error of law, or unless, by a clear preponderance of the evidence, we find it to be unjust or unreasonable." *Id.* at 276; *see* RSA 541:13 (2007). We review the factual findings of the CAB deferentially and review its statutory interpretation *de novo*. *Appeal of Phillips*, 165 N.H. 226, 230 (2013). "We construe the Workers' Compensation Law liberally to give the broadest reasonable effect to its remedial purpose." *Id.* Thus, we resolve all reasonable doubts in favor of the injured worker. *Id.*

■To recover under the Workers' Compensation Law, an employee must show that his injuries arose out of and in the course of employment. RSA 281-A:2, XI. The phrase "in the course of" employment refers to whether the injury "occurred within the boundaries of time and space created by the terms of employment" and "occurred in the performance of an activity related to employment." *Murphy v. Town of Atkinson*, 128 N.H. 641, 645 (1986). The phrase "arising out of" employment refers to the causal connection between the injury and the risks of employment, and requires proof that the injury "resulted from a risk created by the employment." *Id.* Here, the parties agree that the petitioner's injury occurred in the course of his employment. The sole issue in this case, therefore, is whether the petitioner's injury "arose out of" his employment.

Although the parties devote much of their argument on appeal to whether this case falls within the so-called "traveling employee rule," *see Appeal of Griffin*, 140 N.H. 650 (1996), we need not address that issue. Neither party challenges the CAB determination that the case involves a mixed risk. The parties do, however, disagree as to whether the CAB properly construed and applied *Margeson*. The petitioner argues that, because he was a traveling employee, his injury was compensable as a matter of law, and that the CAB need not have engaged in an analysis under *Margeson*. The respondent counters that, because the CAB properly determined that this case involves a mixed risk, the test for determining whether the petitioner's injury arose from his employment is the test set forth in *Margeson* for mixed risks. Accordingly, for purposes of this appeal, we will assume, without deciding, that this case involves a mixed risk and therefore consider the question as framed by the respondent in its brief: whether the CAB erred in its application of *Margeson* to the facts of this case.

■ In *Margeson*, we identified four types of injury-causing risks commonly faced by an employee at work. *Margeson*, 162 N.H. at 277. The first category of risks includes employment-related risks, which include the risk of injuries generally recognized as industrial injuries, such as fingers being caught in gears. *Id.* We stated that "[t]his category of risks always arises out of employment." *Id.*

■The second category, personal risks, includes risks that are so clearly personal that they could not possibly be attributed to employment. *Id.* A fall caused solely by an employee's personal condition, such as a "bad" knee, epilepsy, or multiple sclerosis, falls into this category. *Id.* at 277-78. We stated that "[i]njuries falling squarely into this category are never compensable." *Id.* at 278.

■ The third category of risks, mixed risks, involves a personal risk and an employment risk combining to produce injury. *Id.* A common example is when a person with heart disease dies because of employment-related strain on his heart. *Id.* Although not all injuries resulting from mixed risks are compensable, the concurrence of a personal risk and an employment risk does not necessarily defeat compensability if the employment was also a substantial contributing factor to the injury. *Id.* We explained that the test to be applied in mixed-risk cases is the *Steinberg I* test. *Id.* at 284; *New Hampshire Supply Co. v. Steinberg*, 119 N.H. 223 (1979) (*Steinberg I*). The *Steinberg I* test was developed and originally intended to apply only to heart attack injuries. *Margeson*, 162 N.H. at 282. Over time, "the test's application was logically extended to those injuries likely to be caused by a pre-existing condition because of the similar difficulty in determining whether such injuries result from an employment-related risk or some other cause." *Id.*

■ The *Steinberg I* test is a two-part causation test, which requires proof of legal and medical causation. *Id.* at 279. Legal causation requires a showing that "the claimant's injury is in some way work-related, while medical causation requires a showing that the injury was actually caused by the work-related event." *Id.* The test to be used for legal causation depends upon the previous health of the employee. *Id.* "If the employee suffers from a prior weakness, the employment-connected stress or strain must be greater than that encountered in normal non-employment life. If there is no prior weakness, any work-related stress or strain connected with the injury as a matter of medical fact satisfies the legal causation test." *Id.* at 285 (citation and emphasis omitted).

■ The fourth category, neutral risks, includes risks that are "of neither distinctly employment nor distinctly personal character." *Id.* at 278 (quoting 1 A. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 4.03, at 4-2 (Matthew Bender ed. rev. 2011)). These risks include fortuitous incidents such as being struck by lightning or being hit by a stray bullet. *Id.* This category also includes cases in which "the cause itself, or the character of the cause, is simply unknown." *Id.* (quotation omitted). An unexplained fall, for example, is considered to be a neutral risk. *Id.* Injuries resulting from a neutral risk may be compensable if they result from "a risk greater than that to which the general public is exposed." *Id.* at 283 (quotation omitted). This is known as the "increased-risk test." *Id.* Even if the risk faced by the employee is not qualitatively peculiar to the environment, the injury may be compensable if the employee faces an increased quantity of a risk. *Id.*

In *Margeson*, we instructed the CAB that, in all future cases, it should make a finding regarding the cause of the claimant's injury. *Id.* at 284-85. If the cause is a neutral risk, the increased-risk test applies. *Id.* at 285. If the cause is a non-neutral risk, the claimant must prove legal and medical causation under the *Steinberg I* test. *Id.*

In this case, after concluding that the injury-causing risk was a mixed risk, *i.e.*, a personal risk combined with an employment risk, the CAB ruled that, to be compensated, the petitioner had to prove that his weariness was work-induced, and that the petitioner failed to do so. We do not agree with the CAB that the petitioner has to prove work-induced weariness as a prerequisite to receiving compensation in this case.

As a preliminary matter, we again note that, because neither party argues that this case does *not* present a mixed risk, we are assuming, without deciding, that the CAB was correct in ruling that this case involves a personal risk as well as an employment risk. In *Margeson*, we provided examples of personal risks — an employee's bad knee, epilepsy, or multiple sclerosis — all of which relate to an employee's physical constitution, disease, or internal weakness. *See Margeson*, 162 N.H. at 278. Here, there is no contention that the petitioner suffered from a disease or internal weakness that caused him to fall asleep — rather, the CAB referred to the petitioner's "weariness" and considered whether or not the petitioner had proved "work-related tiredness." Whether being tired and then falling asleep on the job constitutes a mixed risk is an issue that we leave for another day.

Turning to the issue before us, we begin by reiterating our observation in *Margeson* that the concurrence of a personal risk with an employment risk does not necessarily defeat compensability "if the claimant's employment was also a substantial contributing factor to the *injury*." *Id.* at 278 (emphasis added). Although we stated that the *Steinberg I* test should continue to be used for determining compensability for non-neutral risk injuries, application of that test must conform to the nature of the personal and employment risks at issue. The test looks to whether employment-connected "stress or strain" is connected with the injury. *Id.* at 285. The purpose of looking to work-related stress or strain is to determine whether the stress or strain was a contributing factor in causing the employee's physical condition, *e.g.*, whether, as in *Steinberg I*, "the work-related stresses in the particular case at issue were a causal factor in the heart attack which ensued." *Steinberg I*, 119 N.H. at 230 (quotation omitted).

Here, the CAB characterized the petitioner's tiredness as a personal risk, and found that the petitioner failed to prove that his tiredness was caused by his work. However, unlike mixed-risk cases in which the

petitioner's injury resulted from a medical condition, here, the injuries resulted from a motor vehicle accident. The issue before the CAB was whether the petitioner's employment was a substantial contributing factor to the petitioner's *injury. Margeson,* 162 N.H. at 278. Application of the test for proving legal and medical causation must be considered in that context.

We find guidance in our discussion of idiopathic falls, *i.e.*, falls due to conditions personal to the employee, in *Dustin v. Lewis,* 99 N.H. 404 (1955). Consistent with what we said in *Margeson,* such falls, which are the result of a personal risk, are generally deemed not compensable — to routinely grant compensation in such cases would "read out of the Compensation Law the requirement that the injury must arise out of the employment." *Dustin,* 99 N.H. at 408. We further noted, however, Professor Larson's summary of the applicable law: "The only principle on which the effects of falls, caused by internal weakness or disease, can be made attributable to the employment is the idea that the environment supplied a hazard which, added to the idiopathic fall, produced the ultimate injury." *Id.* at 407 (quotation omitted). In holding that the claimant in *Dustin* was not entitled to compensation, we stated:

> When we reach consideration of the idiopathic fall to the level floor, not from a height, not on to or against an object, not caused or induced by the nature of the work or any condition of the floor, we are dealing with an injury which is in no real sense caused by any condition, risk or hazard of the employment.

*Id.* at 408 (quotation omitted).

In its order in this case, the CAB took note of *Dustin,* stating: "In *Dustin v. Lewis,* our Supreme Court held what is still good law today: where 'employment is not a contributory or additional risk in bringing [the accident] about, compensation should be denied.'" That the CAB may have misread *Dustin* is suggested by the CAB's insertion of the bracketed term "the accident" when it quoted a portion of a sentence from *Dustin.* The full sentence from *Dustin* reads as follows: "Where the floor is merely an incident or an occasion that accompanies the *injury* and the employment is not a contributory or additional risk in bringing it about, compensation should be denied." *Dustin,* 99 N.H. at 408 (emphasis added). Thus, the CAB should have used the term "the injury" rather than "the accident" when quoting *Dustin.* By focusing upon the accident, rather than the nature or extent of the injury, the CAB appears to have overlooked *Dustin's* explanation that the employment can supply a hazard which, when added to the petitioner's acts of driving while tired and falling asleep, produced the ultimate injury. Just as the effects of an idiopathic fall can be made

attributable to the employment when the employment supplied a hazard that contributed to the ultimate injury, here, the effects of the petitioner's tiredness and falling asleep can be attributed to the employment, provided that conditions of the job gave rise to a hazard that contributed to the ultimate injury.

 Here, the petitioner's job required him to drive to various job sites in a company truck. On the day of the accident, he was driving a company truck from a job site in Massachusetts to the company shop in Hudson in order to unload the truck. There can be no question that the injurious effects of falling asleep were increased by the environment in which the petitioner found himself at the time he fell asleep — behind the wheel of a moving truck. We have no difficulty concluding on this record, as a matter of law, that the petitioner's employment was "a substantial contributing factor to the *injury*." *Margeson*, 162 N.H. at 278 (emphasis added); *cf. Whittemore v. Sullivan Cty. Homemaker's Aid Serv.*, 129 N.H. 432, 436 (1987) ("Where the employment requires travel, the employee is consequently exposed to hazards she would otherwise have the option of avoiding. Thus, the hazards of the route become the hazards of the employment.").

Our conclusion is in accord with decisions in other jurisdictions. *Marshall v. Bob Kimmel Trucking*, 817 P.2d 1346, 1347 (Or. Ct. App. 1991) (holding a worker's injuries from a truck accident compensable, though the cause of the accident was unknown, because "[t]he risk of serious injury from any loss of consciousness, of idiopathic origin or not, was greatly increased by the fact that claimant was driving a log truck for his employer's benefit"); *Hill v. Faircloth Mfg. Co.*, 630 N.W.2d 640, 646 (Mich. Ct. App. 2001) (holding injuries from vehicular accidents caused by workers' diabetic seizures were compensable "[b]ecause the activity required by their employment placed them in a position of increased risk or aggravated their injuries, the injuries would be compensable even if an idiopathic condition caused them to lose consciousness").

Our holding also promotes the remedial purpose of the Workers' Compensation Law. As we explained in *Mulhall v. Nashua Manufacturing Co.*, 80 N.H. 194, 198 (1921), the intention of the Workers' Compensation Law was to "make the business bear the burden of incidental and accidental injuries without regard to the question of negligence, either on the part of the employer or the employee." *See also* RSA 281-A:14 (2010); *McKay v. N.H. Compensation Appeals Bd.*, 143 N.H. 722, 725 (1999) ("[T]he act provides for no-fault liability . . . ."). As noted above, this is not a case involving an employee's disease or internal weakness. Rather, this case involves a tired employee who fell asleep while driving a company truck to

the company shop in order to unload the truck, all within the course of his employment. Even if we were to assume that the petitioner was negligent in choosing to drive and in falling asleep while doing so, barring recovery on that basis would be contrary to the remedial purpose of the Workers' Compensation Law. *See Phillips*, 165 N.H. at 230 (stating that Workers' Compensation Law is construed liberally to give broadest reasonable effect to its remedial purpose).

Accordingly, we reverse the CAB's ruling that the petitioner's injury did not arise out of his employment and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.