**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**


**In Case No. 2017-0068, <u>Appeal of Richard Adam</u>, the court on November 27, 2017, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm in part, reverse in part, and remand.

The claimant, Richard Adam, appeals a decision of the New Hampshire Compensation Appeals Board (board) denying his claim for workers' compensation benefits relating to kidney function testing and lumbar spine treatments. The board ruled that the testing and treatments were not related to the injuries he sustained as a result of his October 13, 2012 accident at work.

The claimant first argues that the board erred in denying compensation for medical expenses relating to his kidney function testing. We will not disturb the board's decision absent an error of law unless, by a clear preponderance of the evidence, we find it to be unjust or unreasonable. <u>Appeal of Kelly</u>, 167 N.H. 489, 491 (2015). The record shows that the claimant injured his left elbow and left knee at work when he fell ten feet onto a hard surface at a job site. He was first prescribed Lodine, an anti-inflammatory, following his visit to the emergency room. For the next two years, the claimant's medical providers continued to prescribe Lodine, or its generic equivalent, to treat his work-related injuries. On November 20, 2014, the claimant's attending physician at Littleton Regional Healthcare, who was concerned about the long-term effects of Lodine upon the kidneys, ordered testing, the results of which confirmed that the claimant's kidney function was impaired. In response to the kidney test results, the claimant's medical provider at Dartmouth-Hitchcock Medical Center, on December 11, 2014, discontinued the Lodine prescription.

In an October 4, 2016 letter, a nephrologist at Dartmouth-Hitchcock informed the claimant that "prior blood tests had indicated a decrease in your kidney function. From your medical history, the most likely cause of your previous decrease in kidney function was the use of an anti-inflammatory medication . . . Lodine. Off of this medication, your kidney function has returned to normal and there is no sign of any kidney disease at this time."

In its November 10, 2016 decision, the board noted: "The claimant testified that he was informed that the Lodine first prescribed through the Emergency Room for his injury on the date of injury and continued thereafter

for treatment of his knee was likely the cause of the renal function decline and pain he experienced." However, the board concluded that "[w]ithout the support of a narrative medical opinion," the claimant failed to prove that his "renal issues and treatment [were] related to his October 13, 2012 fall." In his motion for rehearing, the claimant asserted that the nephrologist's letter provided a sufficient medical opinion, and he questioned whether the board had overlooked the report. In its order denying the motion, the board referred to the nephrologist's letter as a "note," and concluded that it did not provide "an adequate narrative opinion" of causation.

Regardless of whether the nephrologist's letter is best described as a "note" or a "narrative medical opinion," we conclude that it sufficiently established a causal connection between the claimant's October 13, 2012 injury and the kidney function testing, and that the board's contrary decision was unreasonable. See Appeal of Kelly, 167 N.H. at 491. The record contains no contrary medical opinion on this issue. Accordingly, we reverse the board's decision denying compensation for medical expenses related to the claimant's kidney function testing and remand for a determination of reimbursable medical costs. See Appeal of Lalime, 141 N.H. 534, 538 (1996) (board calculates reimbursable costs in first instance).

As a result of our decision, we need not address the claimant's arguments that the board misapplied its rules regarding motions for rehearing, or that it violated his due process rights under the State Constitution. See Antosz v. Allain, 163 N.H. 298, 302 (2012) (declining to address parties' other arguments where holding on one issue is dispositive).

The claimant next argues that the board improperly drew adverse inferences from the lump sum settlement of his work-related left elbow and left knee injuries, and from his requests for continuing medical treatment for those injuries, to the prejudice of the issues he raises on appeal.

In its decision, the board stated, "Not with standing [sic] [an orthopedic surgeon's] conclusion that [the claimant's] knee and elbow had reached maximum medical improvement[,] and his settlement premised on that conclusion[,] the claimant continued to pursue medical consultation seeking amelioration of his perceived left elbow and arm pain." The claimant correctly notes that his employer is required to pay for medical treatment necessitated by his work-related injuries, see Appeal of Wingate, 149 N.H. 12, 15 (2002), even after his lump sum settlement, see RSA 281-A:37, II (2010) (prohibiting lump sum settlement of the medical provisions of RSA chapter 281-A). However, we disagree that the board construed his lump sum settlement and need for continuing treatment against him. See In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008) (interpretation of board's decision presents a question of law for this court). The board's discussion does not refer to the claimant's kidney function testing or treatment for his lumbar spine condition,

the only two issues that were properly before the board. Accordingly, we conclude that the claimant has failed to show that the board improperly drew adverse inferences from the evidence to the prejudice of his appeal.

The claimant next argues that the board erred in concluding that the treatment for his lumbar spine condition was unrelated to his October 13, 2012 work injury. Medical causation requires a showing that the injured worker's disability was actually caused by the work-related event. Appeal of Newcomb, 141 N.H. 664, 667 (1997). The record contains no report of lumbar injury or low back pain until November 20, 2014, two years after the work injury. On that date, he was seen by his attending physician for neck, arm, and low back pain. On April 7, 2015, the claimant was seen by a neurologist, who noted that the claimant reported experiencing low back pain immediately after the October 13, 2012 accident at work. The neurologist, who had not treated the claimant for his work-related injuries, opined that it would be reasonable to accept the claimant's account; however, he also noted that there was "no documentation one way or the other to either support or challenge his assertions." In addition, the neurologist noted that the claimant had not complained of low back pain when he saw him for neck pain on September 16, 2014, and that his MRI showed degenerative changes to the lumbar spine.

At the carrier's request, an orthopedist performed independent medical examinations of the claimant on June 19, 2013 and May 22, 2014. In his April 15, 2016 report, the orthopedist opined, "with reasonable medical probability[,] that . . . I cannot equate [the claimant's] significant arthritic changes in his lumbar spine to the fall on October 13, 2012." The orthopedist noted that "There is no documentation in this extensive medical file that [the claimant] was complaining of any specific issues referable to the lumbar spine in 2014, or in the cervical spine, that can be related in a temporal fashion back to the fall on October 13, 2012." The board is in the best position to weigh the competing medical evidence. See Appeal of Lalime, 141 N.H. at 540. Based upon this record, we cannot conclude that the board's decision denying compensation for lumbar spine treatment was erroneous as a matter of law or that it was unjust or unreasonable. See Appeal of Kelly, 167 N.H. at 491.

The claimant argues that even if the evidence was insufficient to show that he injured his lower back as a direct result of the October 13, 2012 accident, the evidence showed, and the board found, that his back injury was indirectly related to the work injury. At the appeal hearing, the claimant reported that he was required to drive long distances to obtain medical treatment for his work-related injuries, and that this activity caused him to experience low back pain. The board noted the claimant's account in its November 10, 2016 decision. However, the medical evidence fails to show that the claimant's lumbar spine condition was caused or aggravated by long-distance driving, and we do not construe the board's decision to include such a finding. As the board noted, in response to the claimant's complaints of low

3

back pain, his attending physician ordered an MRI in November 2014, which "along with x-rays demonstrated significant degenerative changes of the lumbar spine and of the hips as well as a compression fracture deformity at T 12 of unknown etiology." The claimant does not identify other medical evidence in the record to support his claim that the lumbar spine condition is work-related. We conclude that the evidence did not compel the board to find that the claimant's need for low back treatment was caused by long-distance driving to medical appointments. Instead, the evidence supported the independent medical opinion that the claimant's low back pain was a symptom of an underlying degenerative condition of the lumbar spine unrelated to the work injury. Accordingly, we affirm the board's decision denying compensation for lumbar spine treatment. See Appeal of Kelly, 167 N.H. at 491.

Affirmed in part; reversed in part; and remanded.

Dalianis, C.J., and Hicks, Lynn, Bassett, and Hantz Marconi, JJ., concurred.

**Eileen Fox,
Clerk**