NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Compensation Appeals Board
No. 2020-0185


APPEAL OF ESTATE OF PETER DODIER
(New Hampshire Compensation Appeals Board)

Argued: November 19, 2020
Opinion Issued: October 14, 2021

Law Office of Manning & Zimmerman, PLLC, of Manchester (Anna Goulet Zimmerman and Maureen Raiche Manning on the brief, and Anna Goulet Zimmerman orally), for the petitioner.


Trombley & Kfoury, PA, of Bedford (Paul R. Kfoury, Jr. and J. Kirk Trombley on the brief, and Paul R. Kfoury, Jr. orally), for the respondents.

BASSETT, J. The petitioner, the Estate of Peter Dodier, appeals an order of the New Hampshire Compensation Appeals Board (CAB) denying the estate's claim for workers' compensation and death benefits following Peter Dodier's death. See RSA 281-A:2, XI, XIII, :26 (2010). The CAB denied the estate's claim based on its determination that Dodier's anxiety and depression were not a compensable injury. It therefore did not reach the issue of death benefits. Because we conclude that Dodier's anxiety and depression are compensable, we reverse the CAB's decision and remand for its consideration of whether the estate is entitled to death benefits.

The following facts are derived from the CAB's orders, are supported by the record, or are otherwise undisputed. Peter Dodier was employed as a branch manager in the Exeter office of respondent OL International Holdings, LLC (OL), an international shipping and logistics company. His responsibilities included overseeing logistics for export and import operations, managing budgets for the Exeter office, engaging in sales, and managing sales staff. At the time of his death, Dodier had worked in the transportation industry, including international transportation, for approximately 30 years.

In 2016, Dodier began to express feelings of stress related to both work and his personal life. His stress worsened over a period of months, and on February 18, 2017, he was admitted to the hospital with symptoms resembling a panic attack. Dodier told hospital personnel that, over the prior six weeks, he had experienced increasing stress at work and feelings of personal inadequacy. He was prescribed anxiety medication, and was discharged the next day with a diagnosis of unspecified anxiety disorder.

On February 20, Dodier attended a doctor's appointment, where he stated that he had felt increased stress from work for about two months, was unsure if he could meet the demands of his job, and was concerned about losing his job. He stated that he had thought about hurting himself, including thoughts of suicide.

On February 23, Dodier was admitted to the hospital again, expressing worsening anxiety and suicidal thoughts. He remained in the hospital for several days, receiving medication and attending therapy groups. On February 28, he appeared to be in full control of his behavior and denied having "safety issues." He requested discharge, and was discharged with a plan for treatment with a psychiatrist and therapist. Following his discharge, Dodier returned to work full-time.

From March 1 to March 9, Dodier attended numerous medical and therapy appointments with multiple providers, during which he expressed feeling significant stress related to his employment. At multiple appointments he described persisting anxiety, largely attributable to feelings of inadequacy at work. He stated that he was looking for a new job and felt guilty about taking anxiety medication. He also stated that he was experiencing financial stress.

On Sunday, March 12, Dodier completed errands in the morning. Later that day, he died by suicide.

In May 2018, Dodier's estate provided a notice of accidental injury or occupational disease to OL. See RSA 281-A:19, :20 (2010). The notice stated that Dodier had "developed severe depression and anxiety from the stress of his job." Respondent Utica National Insurance Group — OL's workers'

compensation insurer — denied the estate's claim for benefits.  The estate challenged the denial in the Department of Labor, which upheld Utica's decision.

The estate then appealed to the CAB, arguing that Dodier's employment had caused his depression, anxiety, and, ultimately, his death by suicide.  The estate asserted that his depression and anxiety were a compensable injury or occupational disease under the Workers' Compensation Law.  See RSA 281-A:2, XI, XIII.  The estate also argued that Dodier's dependents were entitled to compensation for his death.  See RSA 281-A:26.

In a 2-1 decision, the CAB disagreed, ruling that the estate "failed to prove by a preponderance of the evidence that . . . Dodier's anxiety and major depression illness was causally-related to his employment."  Dr. Albert Drukteinis and Dr. Lloyd Price opined that Dodier's employment had substantially contributed to his depression.  In finding for the respondents, the CAB observed that those opinions were based in part on representations about Dodier's work environment made by his wife, who was not familiar with his day-to-day employment responsibilities.  The CAB noted that many of the wife's assertions were contradicted by Dodier's colleagues, who "describe[d] a generally normal, reasonable, and functional work environment."  Importantly, the CAB stated that Dr. Drukteinis's opinion "that work 'substantially contributed' to causing the injury does not permit us to find that the burden of proving causation has been met.  This does not meet the legal requirement that the injury would not have occurred 'but for' the work stress."

The CAB concluded that the estate had failed to prove causation in regard to Dodier's underlying anxiety and depression, finding that Dodier experienced several sources of stress, and that "the largest number" were personal stressors unrelated to his employment.  The CAB relied upon the opinion of the respondents' expert, Dr. David Bourne.  Dr. Bourne had concluded that "in the final analysis, one cannot attribute . . . Dodier's depression to any specific cause.  This means that one should not conclude that work stressors played a substantial contribution to the depression, because the substantial contributor to the depression was the depression itself, rather than any external cause."  The CAB did not reach the issue of whether Dodier's death by suicide was caused by his employment.

The estate filed a motion to reconsider, arguing that the CAB had applied the incorrect causation standard, and that it erred in weighing the evidence, resulting in an unjust and unreasonable decision.  The estate asserted that the CAB's use of a "but for" causation standard was error, and that the applicable standard was whether Dodier's employment was a "substantial contributing factor" to his anxiety and depression.  The estate also argued that the CAB had

erred by failing to adequately consider Dodier's medical records, which provided extensive evidence that his employment substantially contributed to his anxiety and depression.

The CAB denied the motion, relying on its previous findings that Dodier had not experienced an increase in work pressure in the months before his death, and that his work environment was not unusually stressful. The CAB reiterated that it had credited the opinion of Dr. Bourne, and summarily maintained that it "did not apply a 'but for' legal standard" in regard to causation. This appeal followed.

"We will not disturb the CAB's decision absent an error of law, or unless, by a clear preponderance of the evidence, we find it to be unjust or unreasonable." Appeal of Kelly, 167 N.H. 489, 491 (2015) (quotation omitted); see RSA 541:13 (2007). We review the CAB's factual findings deferentially, and we review its statutory interpretation de novo. Appeal of Northridge Envtl., 168 N.H. 657, 660 (2016). "We construe the Workers' Compensation Law liberally to give the broadest reasonable effect to its remedial purpose." Appeal of Phillips, 165 N.H. 226, 230 (2013). "Thus, when construing it, we resolve all reasonable doubts in favor of the injured worker." Id.

On appeal, the estate first argues that the CAB erred when it concluded that the estate did not demonstrate that Dodier's depression and anxiety were caused by his employment. The estate contends that the CAB applied too demanding a standard in determining causation, and that it unreasonably disregarded evidence from Dodier's medical records, which establish that his work "caused or contributed" to his depression and anxiety. The respondents counter that the CAB's decision is consistent with New Hampshire law and supported by the evidence, and is therefore neither unjust nor unreasonable. We agree with the estate.

To recover under the Workers' Compensation Law, an employee must demonstrate that his injury or occupational disease arose "out of and in the course of" his employment. RSA 281-A:2, XI, XIII; see Appeal of Margeson, 162 N.H. 273, 277 (2011). In Margeson, we explained that the phrase "in the course of" employment refers to whether the injury occurred within the boundaries of time and space created by the terms of employment and occurred in the performance of an activity related to employment. Margeson, 162 N.H. at 277. We further explained that the phrase "arising out of" employment refers to the causal connection between the injury and the risks of employment, and requires proof that the injury resulted from a risk created by the employment. Id. We set forth a framework for determining when an injury arises out of employment. See id. at 277-79, 284-85; see also Kelly, 167 N.H. at 492-94 (recounting our decision in Margeson).

4

There are four types of injury-causing risks commonly faced by an employee at work: (1) risks directly associated with employment; (2) risks personal to the claimant; (3) mixed risks; and (4) neutral risks. Margeson, 162 N.H. at 277. The first category, employment-related risks, includes the risk of injuries generally recognized as industrial injuries, such as fingers being caught in gears. Id. "This category of risks always arises out of employment." Id.

The second category is so clearly personal that, even if the risks take effect while the employee is on the job, they could not possibly be attributed to the employment. Id. An example would be a fall caused solely by an employee's medical condition, such as epilepsy. Id. at 277-78. "Injuries falling squarely into this category are never compensable." Id. at 278.

The third category involves a personal risk and an employment risk combining to produce injury. Id. A common example of a mixed-risk injury is when a person with heart disease dies because of employment-related strain on the person's heart. Id. "While not all injuries resulting from mixed risks are compensable, the concurrence of a personal risk does not necessarily defeat compensability if the claimant's employment was also a substantial contributing factor to the injury." Id.

Finally, neutral risks are of neither distinctly employment nor distinctly personal character. Id. These risks include being hit by a stray bullet or struck by lightning. Id. They can also include cases in which the cause itself, or the character of the cause, is simply unknown. Id.; see, e.g., Appeal of Doody, 172 N.H. 802, 808-09 (2020).

In Margeson, we identified the applicable standards based on the type of risk that caused the employee's injury. See Margeson, 162 N.H. at 284-85. If the injury was caused by a neutral risk, the "increased-risk test" applies, which provides that an employee may recover if his employment subjected him to a risk greater than that faced by the general public. See id. at 283-85. If, however, the injury was caused by a non-neutral risk, the claimant must demonstrate both legal and medical causation, as set forth in New Hampshire Supply Co. v. Steinberg, 119 N.H. 223, 230-31 (1979). See Margeson, 162 N.H. at 285.

"Legal causation requires a showing that the claimant's injury is in some way work-related, while medical causation requires a showing that the injury was actually caused by the work-related event." Kelly, 167 N.H. at 493 (quotation omitted); see Steinberg, 119 N.H. at 230-31. "The test to be used for legal causation depends upon the previous health of the employee." Kelly, 167 N.H. at 493. If the employee suffers from a preexisting condition, the

5

employment-connected stress or strain must be greater than that encountered in normal non-employment life. Id. If the claimant does not have a preexisting condition, any work-related activity connected with the injury as a matter of medical fact is sufficient to show legal causation. Margeson, 162 N.H. at 279.

The test for medical causation requires the claimant to establish, by a preponderance of the evidence, that work-related activities probably caused or contributed to the injury as a matter of medical fact. Appeal of Kehoe, 141 N.H. 412, 417 (1996). When a claimant demonstrates that he had no preexisting condition, a showing of medical causation also establishes legal causation. See Petition of Dunn, 160 N.H. 613, 622 (2010).

The respondents argue that we should affirm the CAB's decision because it properly found that the estate failed to prove either medical or legal causation. The respondents contend that, by crediting the opinion of Dr. Bourne, the CAB properly exercised its discretion to weigh competing evidence, and reasonably concluded that medical causation had not been shown. The respondents further assert that, by concluding that Dodier's work environment was generally normal and reasonable, and by considering evidence of non-employment stressors that may have affected Dodier, the CAB reasonably found that legal causation had not been shown. As explained below, we disagree.

In conducting its causation analysis, the CAB erred. Here, as the CAB noted, Dodier experienced work-related stress as well as stress from sources outside of work. Accordingly, Dodier's anxiety and depression resulted from a mixed risk, and therefore the Steinberg causation analysis of legal and medical causation applies. See Kelly, 167 N.H. at 493. However, rather than apply this analysis, the CAB utilized a "but for" causation test, rejecting the proposition that the estate could meet its burden by showing that Dodier's employment was a "substantial contributing factor" to his injury. See id. at 494-96; Margeson, 162 N.H. at 278.

In regard to Dr. Drukteinis's opinion "that work 'substantially contributed' to causing the injury," the CAB stated that "[t]his does not permit us to find that the burden of proving causation has been met. This does not meet the legal requirement that the injury would not have occurred 'but for' the work stress." (Emphasis added.) Similarly, when analyzing Dr. Price's opinion that events and stresses associated with work were "the most significant and predominate contributing cause of . . . Dodier's symptoms of anxiety and depression," the CAB stated, "[a]gain, this can only mean that he believes there were other causes that contributed to cause these conditions." The CAB concluded: "In sum, no medical expert has stated that, but for the work pressures, . . . Dodier would not have developed his anxiety and depression." (Emphasis added.)

Notwithstanding these explicit statements, the respondents argue that the CAB did not actually apply a "but for" causation test. They note that, in its order denying the estate's motion to reconsider, the CAB denied that it had "appl[ied] a 'but for' legal standard" in regard to causation. However, the CAB's disavowal is not convincing; not only did the CAB fail to provide an alternative analysis, but merely insisting that it did not employ a "but for" standard does not erase the fact that it did just that. When we construe the two orders together, it is evident that the CAB did not apply the proper causation standard, and did not make the factual findings necessary to support a proper causation analysis. See In the Matter of Sheys & Blackburn, 168 N.H. 35, 39 (2015) ("The interpretation of a court order is a question of law, which we review de novo.").

Ordinarily, we would remand to the CAB for it to apply the Steinberg causation analysis. However, "when a lower tribunal has not addressed a factual issue, but the record reveals that a reasonable fact finder necessarily would reach a certain conclusion, we may decide that issue as a matter of law." Appeal of Cote, 139 N.H. 575, 580 (1995). Here, none of the doctors who submitted expert reports testified before the CAB. Therefore, "because we have before us the same documentary record that was available to the [CAB]," our determination as to whether a reasonable fact finder could conclude that the estate failed to demonstrate legal and medical causation is a "purely legal question." Id. at 580-82 (observing that, without testimony from the medical experts, the CAB was not "in a better position to assess the experts' credibility," and ruling that a reasonable fact finder would necessarily conclude that employee's medical condition was related to an earlier work-related injury, when five of six doctors who submitted reports reached that same conclusion). After reviewing the same medical records and expert reports as reviewed by the CAB, we conclude that this is a "purely legal question," and that, for the reasons set forth below, the evidence leads to only one reasonable conclusion: that, even assuming that Dodier suffered from a preexisting condition, see Margeson, 162 N.H. at 279, the estate demonstrated legal and medical causation as to Dodier's anxiety and depression. See Cote, 139 N.H. at 580.

The evidence in the record is extensive, and includes several hundred pages of medical records, expert reports, and testimony. The most significant evidence as to legal and medical causation is found in Dodier's medical records from February and March of 2017, when he received treatment for his anxiety and depression. During that time, Dodier also kept a journal to help him process and cope with his condition. As Dr. Price correctly observed, these records — generated just weeks before Dodier's death — are "replete with references to . . . Dodier's workplace stresses and stressors."

For example, when Dodier first sought treatment at the hospital on February 18, he stated that "over the last 6 weeks he ha[d] had increasing stress at work and feelings of personal inadequacy." During a medical

7

appointment on February 20, he stated that his company was in transition, that he was not sure whether he could meet the demands, and that he was concerned about losing his job. When he was re-admitted to the hospital on February 23, he stated that he was overwhelmed with his job and had been working many hours. He described his job as very stressful and stated that he was looking for a new one. During the first week of March, Dodier reported to a medical provider that he was feeling anxiety "mostly stemming from inadequacy at work," and reiterated that he was looking for a new position. He said that he had experienced increased stress over the previous five months "since a poor report at a revenue meeting in October, 2016." In addition, in his journal entry of Sunday, March 5, Dodier stated that he was "[g]etting pretty anxious and worried about working tomorrow." In his entry of March 6, he stated that he had had a "[t]ough morning [at] work" due to issues with some deliveries, and that he was doubting his ability at work, which "really bother[ed]" him. These are but a few of the many references to work stress in Dodier's medical records and journal entries.

To be sure, Dodier's medical records also contain references to other sources of stress. Dodier reported that he was experiencing financial stress, and that he had been struggling with turning 55 and looking at where he was in his life. Nonetheless, as Dr. Drukteinis correctly observed: "Every one of . . . Dodier's mental health treatment providers between 02/18/17 and his death on 03/12/17 refer[s] to work stress as a primary source of . . . Dodier's symptoms."

We note that Dr. Bourne found it significant that Dodier did not leave a suicide note, opining that without such a note

> one cannot know what [Dodier] was thinking in the minutes prior to his suicide. I believe that the lack of a suicide note renders the connection between any specific stressors – including the work stressors – and his death to be speculative.

Given the voluminous evidence of employment-related stress in the final days and weeks of Dodier's life — well documented in the medical records — Dr. Bourne's reliance on the lack of a suicide note is misplaced.

In finding that the estate failed to demonstrate causation as to Dodier's anxiety and depression, the CAB relied on Dr. Bourne's opinion. Yet Dr. Bourne candidly acknowledged that Dodier's medical records and journal entries contain numerous references to work-related stress. In Dr. Bourne's first report, which was based almost entirely on Dodier's medical records and journal entries, he observed that "Dodier's perception of the work environment was clearly among the stressors identified to healthcare providers." Yet, at that time, he stated that he could not reach a conclusion as to causation without

obtaining "a balanced history from multiple perspectives" — particularly those of the employer.  More than a year later, Dr. Bourne submitted a second report, in which he opined that Dodier's employment did not substantially contribute to his depression.  That report was based largely on Dr. Bourne's review of the testimony of Alan Baer, President of OL, and Kaitlin Painter, an employee whom Dodier supervised.

This witness testimony does not support the conclusion that Dodier's employment was not a substantial contributing factor to his anxiety and depression.  In fact, in his second report, Dr. Bourne acknowledged that Baer stated that Dodier "did talk about being stressed and had to be told not to worry and to relax."  Moreover, although Painter testified that Dodier spoke about sources of stress outside of work,[1] she acknowledged that Dodier also expressed feelings of stress related to his employment.  Painter confirmed that, in 2016, Dodier made the final decision to hire a salesperson for the Exeter office.  Shortly thereafter, the salesperson was diagnosed with cancer and was out of work for several months.  When he returned, he struggled significantly in his role, and was put on probation.  Painter reported that Dodier expended significant time and energy trying to motivate the salesperson and help him improve his performance, but that he "just wasn't [making sales] so it was a stressful situation."

Further, Painter testified that Dodier believed that the Exeter office was understaffed.  Although Painter did not agree with this assessment, she acknowledged that Dodier spoke to her about hiring an additional employee for the office.  In fact, as part of his second report, Dr. Bourne reviewed an email that Dodier wrote to Baer and another supervisor just four days before his death, in which he urged them to allow the office to hire an additional employee, emphasizing that he "wouldn't ask if [he] didn't think it was important."  In that same email, Dodier also thanked his supervisors "for giving [the salesperson] the added time to prove himself," thereby confirming that the salesperson's performance and standing with the company were a source of concern for Dodier.  Taken together, the testimony, emails, medical records, and journal entries inexorably lead to one conclusion: that Dodier's employment was causing him significant stress, which substantially contributed to his anxiety and depression.

In addition, even if one accepts Dr. Bourne's theory of Dodier's illness as true, that does not mean that the estate failed to demonstrate legal and medical causation.  Dr. Bourne concluded that "Dodier's depression was of the type that would be classified as an endogenous, or biological depression, as

---

[1] Painter testified that Dodier expressed feelings of stress related to caring for his mother and a lawsuit he had been involved in.  It is notable, however, that Dodier's medical records and journal entries contain no reference to those issues as sources of his stress.

9

opposed to reactive, or exogenous depression." In essence, Dr. Bourne found that Dodier's depression was not caused by "any external cause," such as work or personal stress, but rather unrelated biological causes. Dr. Bourne concluded that "[i]t is more likely that, because he was depressed . . . Dodier started dwelling on issues such as being 55, worrying unreasonably about his financial future . . . and worrying about work performance and about his ability to perform his job." Thus, in Dr. Bourne's view, Dodier's depression pre-dated and was completely unrelated to his work stress, causing him to perceive his employment as more stressful than it actually was.

However, at most, Dr. Bourne's opinion could establish that Dodier suffered from a preexisting condition; it does not demonstrate that Dodier's anxiety and depression are not a compensable injury. The very concept of a mixed-risk injury reflects the fact that a compensable injury can have both employment and non-employment causes. See Margeson, 162 N.H. at 278. That is why an injury is compensable even if the employee suffers from a preexisting condition, so long as the claimant shows "by a preponderance of the evidence that his employment contributed something substantial to his medical condition by demonstrating that the work-related conditions presented greater risks than those encountered in his non-employment activities." Id. at 279 (quotation omitted). For example, a heart attack is compensable even if the employee suffers from "a previously weakened or diseased heart," so long as the employment contributed "something substantial to the heart attack." Steinberg, 119 N.H. at 231.

For the same reasons, "[a]n employee with a congenital or degenerative disease need not prove that his disability would not have arisen but for his employment. If work activities contribute to the employee's disability, even if disability without such contribution would result from his condition at some future date, the employee may recover." Appeal of Bellisle, 144 N.H. 201, 204 (1999). An employee must prove that a specific work-related incident or cumulative work-related stress "contributed to, aggravated, exacerbated, or accelerated the employee's congenital or otherwise preexisting condition to disability." Id. Consequently, an employee may receive compensation for depression induced in part by employment-related stress, even if the employee suffers from preexisting depression and other mental health issues. See Appeal of N.H. Dep't of Health and Human Servs., 145 N.H. 211, 212, 214-16 (2000) (decided under prior version of RSA 281-A:2, XI). The mere fact that a mental illness cannot be attributed solely to a claimant's employment does not mean that the injury is not compensable. See Averill v. Dreher-Holloway, 134 N.H. 469, 470-73 (1991) (affirming trial court's conclusion that claimant's employment-related stress caused or contributed to his depressive illness, when claimant suffered from physical ailments due to multiple pre-employment accidents, as well as numerous additional medical conditions and personal problems that developed throughout his thirteen years working for the employer).

With these principles in mind, and having set out the evidence above, we now apply the tests for legal and medical causation.  In regard to legal causation, as explained above, when an employee suffers from a preexisting condition, the employee must show that his work-related conditions presented greater risks than those he encountered in his non-employment activities.  See Margeson, 162 N.H. at 279; see also Steinberg, 119 N.H. at 231 (explaining that when an employee suffers from a preexisting condition, an injury is compensable so long as the employment "contribute[d] something substantial" to the injury).  Here, even accepting Dr. Bourne's conclusion that Dodier suffered from biological depression that preexisted his work-induced stress, a reasonable fact finder would necessarily conclude that the estate met its burden.

The CAB found that Dodier did not experience a significant increase in either work-related or non-work-related pressures in the months before his death.  Given this finding, and that the CAB adopted Dr. Bourne's opinion that Dodier's depression was not caused by events either within or outside of his employment, we interpret the CAB's order as concluding that neither Dodier's work nor non-work environment was unusually stressful.  See Sheys, 168 N.H. at 39 (stating that the interpretation of a court order presents a question of law).  Notwithstanding that neither source of risk was unusual, the estate demonstrated legal causation by showing that the risks of stress from Dodier's employment were greater than the risks of stress from his non-employment activities.  The medical records and journal entries, "replete with references" to Dodier's workplace stressors, demonstrate that Dodier's employment contributed more to his stress than did his non-work activities.  Indeed, as Dr. Drukteinis correctly noted, all of Dodier's mental health treatment providers between February 18 and his death on March 12 referred to work stress as a primary source of his anxiety and depression.

As to medical causation, the employee's burden is to show that work-related activities probably caused or contributed to the injury as a matter of medical fact.  Kehoe, 141 N.H. at 417.  We have little trouble concluding that a reasonable fact finder would determine, as did Drs. Drukteinis and Price, that Dodier's employment caused or contributed to his anxiety and depression.  Even if Dodier were suffering from biological depression that left him in a more vulnerable mental condition, the inescapable conclusion from the medical records and journal entries is that his employment "contributed to, aggravated, exacerbated, or accelerated . . . [his] preexisting condition to disability." Bellisle, 144 N.H. at 204.  Even if Dodier's depression preexisted his work-induced stress, and his reaction to his work environment may have been unexpected, we conclude that Dodier's injury is compensable because his employment contributed substantially to the worsening of his symptoms.  See N.H. Dep't of Health and Human Servs., 145 N.H. at 214-15.  The CAB's conclusion to the contrary was based on its application of an improper "but for"

11

causation test, and, applying the proper causation analysis, we conclude that a reasonable fact finder would necessarily determine that the estate met its burden.  See Cote, 139 N.H. at 582.

Finally, the estate urges us to find that Dodier's anxiety and depression caused his death by suicide, or, alternatively, that we remand to the CAB directing it to determine whether his death by suicide was caused by his mental injury.  The respondents counter that because Dodier's suicide was caused by a "willful intention to injure himself," RSA 281-A:2, XI, death benefits under RSA 281-A:26 are barred as a matter of law, and it is therefore irrelevant whether Dodier's suicide was caused by his anxiety and depression.

On October 13, 2021, we decided Appeal of Pelmac Industries Inc., 174 N.H. ___, ___ (decided October 13, 2021), in which we held that, in some circumstances, an employee's death by suicide does not result from the employee's "willful intention to injure himself," RSA 281-A:2, XI, such that death benefits are barred under RSA 281-A:26.  See Pelmac, 174 N.H. at __ (slip op. at 10-13).  We stated that an employee's death by suicide "is compensable under RSA 281-A:26 if the claimant proves by a preponderance of the evidence that the suicide resulted from a disturbance of mind of such severity as to override normal, rational judgment, and that such disturbance of mind resulted from the employee's work-related injury and its consequences." Id. at __ (slip op. at 12).  We explained that this chain-of-causation test, similar to that adopted in other states, "essentially places the burden on the claimant to prove by a preponderance of the evidence that there was an unbroken chain of causation between the work-related injury, the disturbance of mind, and the ultimate suicide."  Id. at __ (slip op. at 12) (quotation and brackets omitted).

We remand for further proceedings consistent with this opinion.  On remand, the CAB must apply the test set forth in Pelmac to determine whether Dodier's death by suicide was a direct and natural result of his initial compensable injury of anxiety and depression, such that the suicide is compensable under RSA 281-A:26.

Reversed and remanded.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.

12